IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| FLORIAN VOSS and PEIYUAN HU, a married couple, | No. 86898-5 |
| TARINA TRUST, a trust formed under the laws of the State of Washington, | DIVISION ONE |
| ERIC HILD and KIM HILD, a married couple, | UNPUBLISHED OPINION |
| STEPHEN R. DICKSON and JANET DICKSON, a married couple, | |
| BRETT LUMSDEN and JAIME LUMSDEN, a married couple, and | |
| RYAN TERRY and TRACI TERRY, a married couple, | |
| Appellants, | |
| v. | |
| HUBERT KEENE AND CAROLINE KEENE, a married couple, and the marital community comprised thereof, | |
| Respondents. | |

COBURN, J. — Hubert and Caroline Keene remodeled an existing one-story home in a Bellevue neighborhood with restrictive covenants. The project included adding a lofted "cathedral ceiling" to the roof of the existing dwelling. After the construction of this new roofline was complete, Florian Voss, Peiyuan Hu, the Tarina Trust, Eric and Kim Hild, Stephen and Janet Dickson, Brett and

Jaime Lumsden, and Ryan and Traci Terry (collectively "the Neighbors") filed a lawsuit against the Keenes claiming that the roofline construction violated certain restrictive covenants governing single-story dwellings and roof pitch height. Under the restrictive covenants, a challenged construction is deemed to have been fully complied with related covenants if no suit to enjoin the construction has been commenced prior to completion thereof. Accordingly, we affirm the trial court's summary judgment dismissal of the Neighbors' lawsuit against the Keenes.

FACTS

The Keenes own property located on 123rd Ave SE in Bellevue. The appellants in this matter own nearby properties also located on this street. All properties have views or partial views of the Seattle and Bellevue skylines and the Olympic Mountains.

These properties are located in a Woodridge neighborhood subject to the same set of restrictive covenants.[1] One of these covenants mandates that the height of a detached single-family dwelling shall not "exceed one story in height in case of non-basement house, or one story in height above basement and private garage for not more than two cars." The covenants do not otherwise

---

[1] These covenants were initially executed in 1957 by the owner, a builder, of all the real property in "Woodridge Division No. 2." The document provides:

> These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty-five years from date these covenants are recorded, after which time said covenants shall be automatically extended for successive periods of ten years, unless an instrument signed by a majority of the then owners of lots has been recorded, agreeing to change said covenants in whole or in part.

provide limitations as to what constitutes "one story in height." Another covenant restricts the roof pitch of all structures to no more than "4-½ feet in elevation for each 12 feet of horizontal distance." None of the covenants expressly address protecting views.

Notably, an additional restrictive covenant applicable to these properties sets forth as follows:

> The Committee's approval or disapproval as required in these covenants shall be in writing. In event the committee or its designated representative fails to approve or disapprove within thirty days after plans have been submitted to it or <u>in any event if no suit to enjoin the construction has been commenced prior to completion thereof, approval will not be required and the related covenants shall be deemed to have been fully complied with</u>.

(Emphasis added.)

"The Committee" in this covenant refers to the Architectural Control Committee, which both parties agree is long defunct.

In September 2021, the Keenes purchased property located on 123rd Ave SE, which included an existing one-story dwelling. Shortly thereafter, the Keenes initiated a remodeling project to add a lofted "cathedral ceiling" to the roof of the existing dwelling. The Keenes requested permits from the City of Bellevue and, in May 2022, began the project.

In October 2022, the construction on the framing of the cathedral ceiling of the dwelling was completed, establishing the new height and roof pitch of the dwelling in question.

As of June 1, 2023, the dwelling "was ready to be occupied and only punch list items were left to complete," including the Keenes' occupation thereof, the connection of certain utility services, and certain final inspections.

On June 15, the Neighbors filed a complaint in King County against the Keenes seeking declaratory relief, injunctive relief, and damages for the Keenes' alleged breach of the height- and story-related restrictive covenants. The Neighbors' complaint described the alleged construction, in pertinent part, as follows:

> 22. Not long after framing went up, Plaintiffs realized that Defendants were increasing the height of a substantial portion of the existing house by several feet above the long-existing one-story roofline.
> 23. Defendants' new addition is in violation of the Protective Covenants that encumber Defendants' property.

(Emphasis added.)

In April 2024, the Keenes moved for summary judgment dismissal of the Neighbors' claims against them. The trial court granted their motion and dismissed the Neighbors' claims with prejudice.[2]

The Keenes timely appealed.

---

[2] The Neighbors then filed motions for reconsideration and clarification of the court's order. The court denied the motion for reconsideration and granted the motion for clarification. As discussed herein, summary judgment review is de novo and we affirm the trial court's grant of summary judgment on a basis other than that which the trial court relied. We therefore need not consider the basis or reasoning articulated by the trial court.

The Keenes later filed a motion for an award of costs in an amount of $371.08, which the trial court granted. On appeal, the Neighbors do not challenge the trial court's award of costs to the Keenes.

DISCUSSION

The Neighbors assert that the trial court erred by granting summary judgment dismissal in favor of the Keenes. We disagree.

We review summary judgment orders de novo. Strauss v. Premera Blue Cross, 194 Wn.2d 296, 300, 449 P.3d 640 (2019). Summary judgment is properly granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Neighbors v. King County, 15 Wn. App. 2d 71, 80, 479 P.3d 724 (2020); CR 56(c). We may affirm the trial court's decision on any basis supported by the record. Huff v. Wyman, 184 Wn.2d 643, 648, 361 P.3d 727 (2015).

Interpretation of a restrictive covenant presents a question of law, to which we apply the rules of contract interpretation. Wilkinson v. Chiwawa Communities Ass'n, 180 Wn.2d 241, 249, 327 P.3d 614 (2014) (citing Wimberly v. Caravello, 136 Wn. App. 327, 336, 149 P.3d 402 (2006)). The court's objective in interpreting restrictive covenants is to determine the intent of the drafters. Wilkinson, 180 Wn.2d at 250; Riss v. Angel, 131 Wn.2d 612, 621, 934 P.2d 669 (1997). In discerning the intent of the drafters, we give language its plain and ordinary meaning. Riss, 131 Wn.2d at 621. Summary judgment is proper if the language has only one reasonable meaning. Wm. Dickson Co. v. Pierce County, 128 Wn. App. 488, 494, 116 P.3d 409 (2005) (citing Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 83, 60 P.3d 1245 (2003)).

The Neighbors assert that the trial court should not have granted summary judgment to the Keenes. This is so, the Neighbors contend, because a genuine

issue of material fact exists concerning whether the Keenes' construction violated the height- and story-related restrictive covenants set forth in their complaint. We disagree.

As set forth above, the properties in question—including the Keenes'—are governed by another restrictive covenant that states, in relevant part,

> In event the committee or its designated representative fails to approve or disapprove within thirty days after plans have been submitted to it or <u>in any event if no suit to enjoin the construction has been commenced prior to completion thereof, approval will not be required and the related covenants shall be deemed to have been fully complied with</u>.

(Emphasis added.)

In interpreting this restrictive covenant, our unpublished decision in <u>Lionetti v. Shriram Family Revocable Tr.</u>, No. 86007-1-I, slip op. (July 29, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/860071.pdf, is instructive.[3] We were asked to interpret the exact same covenant in <u>Lionetti</u>. There, we stated as follows:

> Both the [Lionettis]' and the Trust's properties are governed by a restrictive covenant that states, in relevant part:
>
> In the event the committee, or its designated representative fails to approve or disapprove within

---

[3] Each party relies on our unpublished decision in <u>Lionetti</u> in its briefing on appeal. GR 14.1(a) provides as follows:

**Washington Court of Appeals**. Unpublished opinions of the Court of Appeals are those opinions not published in the Washington Appellate Reports. Unpublished opinions of the Court of Appeals have no precedential value and are not binding on any court. However, unpublished opinions of the Court of Appeals filed on or after March 1, 2013, may be cited as nonbinding authorities, if identified as such by the citing party, and may be accorded such persuasive value as the court deems appropriate.

As discussed herein, because <u>Lionetti</u> involved an interpretation of a covenant identical to the one now before us on appeal, we accord this decision significant persuasive value.

> thirty days after plans have been submitted to it, or in the event no suit to enjoin the construction has been commenced prior to completion thereof, approval will not be required and the related covenants shall be deemed to have been fully complied with.
>
> . . .
>
> . . . [T]he intent of the covenant is clear from its plain language. The covenant plainly states that if the committee has not taken action within 30 days (which it did not) and if no suit was filed before construction is completed (which it was not), then "the related covenants shall be deemed to have been *fully complied with*." (Emphasis added.) This covenant provides a complete defense to any suit filed after completion of a structure, even if that structure would otherwise be noncompliant with the restrictive covenants that require approval of the Architectural Control Committee.

Lionetti, slip op. at 4-5. Given that, the questions before us are whether the committee did not take action within 30 days after the Keenes' commencement of the construction in question and whether the Neighbors filed their complaint regarding "the construction" prior to that construction's completion. We answer both questions in the negative.

First, as discussed above, the parties do not dispute that the committee in question is long defunct. Therefore, the committee did not take action in response to the construction in question in the 30-day time-period.

Second, there is no genuine issue of material fact as to whether the challenged construction was completed before the Neighbors filed their lawsuit in this matter. The challenged construction identified in the Neighbors' complaint was the Keenes' addition to their dwelling of a cathedral ceiling that created a roofline that blocked some of the Neighbors' views. The parties do not meaningfully dispute that, as of June 1, 2023—and perhaps as early as October

2022—construction on the exterior structure constituting the cathedral ceiling had been completed.

The Neighbors' argument before the trial court and now on appeal instead focuses on the date on which various other remodeling-related aspects were alleged to have been in progress or the degree to which the "home" was not completed at the time that the Neighbors filed their complaint. According to the Neighbors, the record contained evidence that, as of the filing of their complaint on June 15, 2023, certain utilities had not yet been connected to the dwelling, certain final permits had not yet been issued, the Keenes not yet participated in a final inspection and walkthrough of the dwelling, and the Keenes had not yet moved into and occupied the dwelling.

The Neighbors miss the mark. The construction that was identified in their complaint as being allegedly out of compliance with the height- and story-related restrictive covenants was the Keenes' addition of a cathedral ceiling to their dwelling, not other unrelated projects immaterial to the allegations in their complaint. Construction on the cathedral ceiling establishing the roofline in question was completed as of June 1, 2023 or as early as October 2022. The Neighbors filed their complaint on June 15, 2023, at least two weeks—and possibly several months—after the challenged construction's completion. Therefore, by the plain language of the relevant covenant, the Keenes' project "shall be deemed to have been fully complied with" "the related covenants."

Thus, the Neighbors cannot establish the existence of a genuine issue of material fact as to whether the Keenes' construction violated the restrictive

covenants as set forth in their complaint. Accordingly, the trial court did not err by granting the Keenes' motion for summary judgment.[4]

Request for an Award of Costs

The Keenes request an award of costs on appeal pursuant to RAP 18.1. This request is denied. An award of costs on appeal is governed by Title 14 of the Rules of Appellate Procedure, not RAP 18.1. See RAP 14.2.

Nevertheless, following the Keenes' compliance with the procedures and requirements of Title 14, a commissioner of this court will enter an appropriate order.

We affirm.

_____
Coburn, J.

WE CONCUR:

_____        _____
Birk, J.                                                      Smith, J.

---

[4] The Neighbors' remaining assignments of error regard the basis for the trial court's summary judgment ruling and whether the Neighbors could seek injunctive relief, damages, or both if they prevailed on appeal. Given our disposition of this matter, we need not address these remaining assignments of error.